# United States Court of Appeals for the Federal Circuit

2006-1208

FISHERMAN'S HARVEST, INC., C. JOE NELSON, JR., DORIS MAE NELSON, VANESSA JO NELSON VALLEJO, VICKIE JO NELSON SALAZAR, and NELSON PLAINTIFFS FISHERMAN'S HARVEST, INC.,

Plaintiffs-Appellants,

and

CHILDRESS SEAFOOD, INC., W. F. CHILDRESS, and ALTON LEE KELLY,

Plaintiffs-Appellants,

v.

PBS & J (formerly known as Espey, Huston & Associates, Inc.),

Defendant,

and

BERTUCCI CONTRACTING CORPORATION,

Defendant,

and

LUHR BROTHERS, INC.,

Defendant,

and

BRADLEY INDUSTRIAL TEXTILES, INC.,

Defendant-Appellee,

and

NICOLON CORPORATION (also known as Ten Cate Nicolon),

Defendant-Appellee,

and

HUSTON & ASSOCIATES, INC.,

Defendant,

and

WEEKS MARINE, INC.,

Defendant/Third Party Plaintiff-Appellee,

v.

UNITED STATES ARMY CORPS OF ENGINEERS,

Third Party Defendant-Appellee.

Paul W. O'Finan, Paul W. O'Finan Law Office, of Houston, Texas, argued for Childress Seafood, Inc., et al, and for all plaintiffs-appellants. With him on the brief for Fisherman's Harvest, Inc., et al, was David E. Bernsen, of Beaumont, Texas.

Paul G. Preston, The Preston Law Firm, L.L.P., of Houston, Texas, for defendant-appellee, Bradley Industrial Textiles, Inc. With him on the brief was Devon H. Decker.

Jill A. Schaar, Locke Liddell & Sapp LLP, of Houston, Texas, for defendant-appellee, Nicolon Corporation (also know as Ten Cate Nicolon).

Kenneth G. Engerrand, Brown Sims, P.C., of Houston, Texas, argued for defendant/third party plaintiff-appellee.

David D'Alessandris, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for third party defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, and Patricia M. McCarthy, Assistant Director.

Appealed from: United States District Court for the Southern District of Texas

Judge Samuel B. Kent

# United States Court of Appeals for the Federal Circuit

2006-1208

FISHERMAN'S HARVEST, INC., C. JOE NELSON, JR., DORIS MAE NELSON, VANESSA JO NELSON VALLEJO, VICKIE JO NELSON SALAZAR, and NELSON PLAINTIFFS FISHERMAN'S HARVEST, INC.,

Plaintiffs-Appellants,

and

CHILDRESS SEAFOOD, INC., W.F. CHILDRESS, and ALTON LEE KELLY,

Plaintiffs-Appellants,

v.

PBS & J (formerly known as Espey, Huston & Associates, Inc.),

Defendant,

and

BERTUCCI CONTRACTING CORPORATION,

Defendant,

and

LUHR BROTHERS, INC.,

Defendant,

and

BRADLEY INDUSTRIAL TEXTILES, INC.,

Defendant-Appellee,

and

NICOLON CORPORATION (also known as Ten Cate Nicolon),

Defendant-Appellee,

and

HUSTON & ASSOCIATES, INC.,

Defendant,

and

WEEKS MARINE, INC.,

Defendant/Third Party Plaintiff-Appellee,

v.

UNITED STATES ARMY CORPS OF ENGINEERS,

Third Party Defendant-Appellee.

_____

DECIDED: June 21, 2007

_____

Before NEWMAN, LINN, and MOORE, Circuit Judges.

Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge NEWMAN.

LINN, Circuit Judge.

This case involves alleged damage to oyster growers due to dredging operations and requires us to interpret the scope of jurisdiction provided by 28 U.S.C. § 1497 and the availability of 28 U.S.C. § 1404(a) for transfers to the United States Court of Federal Claims. The appellants, which we refer to collectively as the oyster growers, appeal from the portion of a judgment by the United States District Court for the Southern District of Texas transferring the oyster growers' claims against private contractors to the Court of Federal Claims. Fisherman's Harvest, Inc. v. Weeks Marine, Inc., No. 3:05-

CV-151 (S.D. Tex. Nov. 15, 2005) ("Transfer Decision"). Because there was not a "want of jurisdiction" in the district court over the oyster growers' private tort action, and because 28 U.S.C. § 1404(a) does not provide for transfers from a district court to the Court of Federal Claims, we reverse the transfer of the oyster growers' claims and remand.

## I. BACKGROUND

The oyster growers are the owners or beneficial owners of oyster leases in Galveston Bay and Trinity Bay, Texas, and of businesses involved in the harvesting, processing, and sale of oysters in Smith Point, Texas. The oyster growers allege that their oyster leases and businesses suffered damage as a consequence of maintenance dredging and widening in the Trinity River and maintenance dredging in the channel at Smith Point (the "dredging projects"). The United States Army Corps of Engineers ("Army Corps of Engineers") initiated the dredging projects and involved Weeks Marine, Inc. and the other defendants as contractors, subcontractors, and suppliers (collectively, the "private contractors"). According to the oyster growers, the private contractors' negligent design and implementation of the dredging project caused geotubes and breakwater barriers to fail, resulting in a continuous discharge of silt, sediments, and other toxic materials onto the oyster leases.

The oyster growers filed suit against the private contractors in federal district court, alleging federal question and diversity jurisdiction. On June 23, 2005, Weeks Marine filed a third-party complaint against the Army Corps of Engineers, alleging a contractual right to contribution and indemnity. Neither the oyster growers' complaint

nor the third-party complaint against the government asserted a cause of action derived from 28 U.S.C. § 1497.[1]

The Army Corps of Engineers moved to dismiss the third-party complaint for lack of jurisdiction, asserting that the Court of Federal Claims has exclusive jurisdiction over Weeks Marine's claim for contribution and indemnification based on 28 U.S.C. §§ 1491(a) and 1497. Weeks Marine responded to the motion to dismiss with a motion to transfer the entire case—including the oyster growers' claims against the private contractors—to the Court of Federal Claims based on 28 U.S.C. §§ 1404(a) and 1631. The district court concluded that under 28 U.S.C. § 1497, the Court of Federal Claims had exclusive jurisdiction over Weeks Marine's third-party complaint against the Army Corps of Engineers. Transfer Decision, slip op. at 3–5. The district court also noted that nothing in section 1497 prohibited transferring the oyster growers' claims against the private contractors and reasoned that the interests of judicial economy and justice

---

[1] On appeal, the private contractors suggest that the oyster growers' claims for damage amount to a cause of action under section 1497 and cite to opinions by the Court of Claims as examples of such a cause of action. See Schroeder Besse Oyster Co. v. United States, 95 Ct. Cl. 729, 738 (1942) (examining the predecessor to section 1497 and stating that "[u]nder the terms of this act the government has not only given plaintiff the right to sue for damages but it admits its liability for all damages resulting from 'dredging operations and use of other machinery and equipment'"); Petrovich v. United States, 421 F.2d 1364, 1365–67 (Ct. Cl. 1970) (applying Schroeder to claims filed pursuant to section 1497). The district court may also have viewed section 1497 as creating a cause of action. See Transfer Decision, slip op. at 4 ("In addition, this Court's research revealed no cases in which District Courts have adjudicated causes of action under § 1497."). Section 1497, much like the Tucker Act, provides only that the Court of Federal Claims "shall have jurisdiction . . . ." See 28 U.S.C. §§ 1491(a)(1), 1497. It is questionable whether section 1497—by itself—provides a right to sue for damages. Cf. United States v. Testan, 424 U.S. 392, 398 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages."). That issue is not before us, however, and we leave its resolution to another day.

favored a transfer of the entire case.  Id., slip op. at 5.  Accordingly, the district court granted Weeks Marine's motion to transfer.

The oyster growers appeal from the district court's order to transfer their negligence claims against the private contractors to the Court of Federal Claims and allege that we have jurisdiction pursuant to 28 U.S.C. § 1292(d)(4)(A).[2]

## II.  DISCUSSION

### A.  Appellate Jurisdiction

Generally, a transfer order is interlocutory and thus not appealable unless incident to a final judgment or as a certified question pursuant to 28 U.S.C. § 1292(b). However, under 28 U.S.C. § 1292(d)(4)(A), this court "shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States . . . granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title."

Here, in the context of examining the oyster growers' claims, the district court cited only to 28 U.S.C. §§ 1404(a) and 1497 as bases for transferring the oyster growers' claims to the Court of Federal Claims.  Transfer Order, slip op. at 5.  The district court's analysis preceding that citation discussed section 1497, determined that section 1497 gave the Court of Federal Claims exclusive jurisdiction over the third-party complaint, and concluded that the third-party complaint should be transferred under 28 U.S.C. § 1631.  See id., slip op. at 3–5.  Section 1631 provides that when a court "finds

---

[2]    The government did not appeal from the district court's transfer of Weeks Marine's third-party complaint.  Therefore, at issue in this case is only the propriety of the transfer of the oyster growers' claims against the private contractors, and we take no position on the propriety of the transfer of the third-party complaint against the United States.

that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." Although section 1631 is not cited in the district court's analysis of the oyster growers' claims, implicit in its citation to section 1497 is a determination that it lacked jurisdiction over those claims as well. We are therefore satisfied that the district court's order transferring the oyster growers' claims was made pursuant to section 1631 and that we have jurisdiction over the appeal.

B. Transfer to Cure Want of Jurisdiction

Section 1631 provides that when a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. The statute requires the transferor court to determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction. Because such a determination is jurisdictional, we give a district court's decision to transfer a case to the Court of Federal Claims plenary review. United States v. County of Cook, Ill., 170 F.3d 1084, 1087 (Fed. Cir. 1999); James v. Caldera, 159 F.3d 573, 578 (Fed. Cir. 1998).

Here, the district court transferred the oyster growers' claims against the private contractors without engaging in the analysis required by section 1631. Specifically, the district court failed to determine whether it lacked jurisdiction or whether the Court of Federal Claims possessed jurisdiction over the oyster growers' claims. The oyster growers filed an action against the private contractors for negligence; Weeks Marine's subsequent third-party complaint against the government does nothing to change the

jurisdictional inquiries presented by that action. <u>See</u> 6 Wright, Miller, & Kane, Federal Practice and Procedure §§ 1442, 1444 (2d ed. 1990) ("Of course, when there is no subject-matter jurisdiction over the original action between plaintiff and defendant, it cannot be created by adding a third-party claim over which there is jurisdiction."). Implicit in the district court's transfer is that 28 U.S.C. § 1497 resolves the section 1631 inquiries in favor of transferring the oyster growers' claims. Whether the jurisdictional grant provided by section 1497 supports such a transfer is a matter of pure statutory interpretation that we review de novo. <u>Merck & Co. v. Kessler</u>, 80 F.3d 1543, 1549 (Fed. Cir. 1996).

Section 1497 creates jurisdiction in the Court of Federal Claims over actions for damages to oyster growers, and provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon <u>any claim</u> for damages to oyster growers on private or leased lands or bottoms arising from dredging operations or use of machinery and equipment in making river and harbor improvements authorized by Act of Congress.

28 U.S.C. § 1497 (emphasis added). As framed by the parties, the issues on appeal are whether the phrase "any claim"—without restriction—provides jurisdiction for the Court of Federal Claims to adjudicate the oyster growers' tort claims filed solely against private parties; and whether such jurisdiction, if provided, is exclusive.

The oyster growers argue that section 1497 should be read consistently with the Tucker Act as only creating jurisdiction to entertain claims against the United States. The government—styled as a third party defendant-appellee in this appeal—agrees, noting that the Court of Federal Claims is a legislative court limited to resolving claims

involving public rights, not private rights. The oyster growers also argue that, to the extent there is jurisdiction, such jurisdiction is not exclusive.

The private contractors counter that although the Tucker Act expressly creates jurisdiction for claims "against the United States," section 1497 does not, and thus section 1497 means what it says in providing jurisdiction for "any" claim for damages to oyster growers. The private contractors also counter that such jurisdiction is exclusive to the Court of Federal Claims, arguing that before the predecessor to section 1497 was enacted, oyster farmers had no cause of action against private parties engaged in dredging operations as demonstrated by Lewis Blue Point Oyster Cultivation Co. v. Briggs, 229 U.S. 82 (1913). As further support for exclusive jurisdiction, the private contractors note that section 1497 makes no mention of concurrent jurisdiction, whereas 28 U.S.C. § 1491(b) provides jurisdiction to both the Court of Federal Claims and the district courts.

Because there was no "want of jurisdiction" over the oyster growers' claims against the private contractors, a transfer under section 1631 is not proper. The oyster growers' state law tort claims, which allege complete diversity of citizenship and an amount in controversy exceeding $75,000, meet the jurisdictional requirements of 28 U.S.C. § 1332. As a result, the necessary "want of jurisdiction" can only be found in this case if the jurisdictional grant provided by section 1497 is exclusive, thereby removing the matter from the district court's diversity jurisdiction. We therefore focus our analysis on the critical question of whether the jurisdictional grant provided by section 1497 is exclusive.

When interpreting a statute, we look first to the language of the statute. United States v. Wells, 519 U.S. 482, 490 (1997). Here, the language of section 1497 does not designate its jurisdictional grant as exclusive or otherwise expressly abrogate jurisdiction in other forums in which the oyster growers' claims could be brought. Contrary to the private contractors' argument, the failure to use the phrase "concurrent jurisdiction" does not—by itself—make the jurisdictional grant exclusive. For example, statutes separately provide that the district courts, the Court of Federal Claims, and the United States Tax Court "shall have jurisdiction" over suits under section 6226 of the Internal Revenue Code of 1986. See 28 U.S.C. § 1346 (district courts); id. § 1508 (Court of Federal Claims); 26 U.S.C. § 7442 (Tax Court). Although these statutes fail to use the phrase "concurrent," they nevertheless create original jurisdiction for section 6226 actions in all three forums. See TransCapital Leasing Assocs., 1990-II, L.P. v. United States, 398 F.3d 1317, 1321 n.3 (Fed. Cir. 2005). Indeed, because the terms of 28 U.S.C. § 1332 provide district courts with jurisdiction over the oyster growers' claims, it is the absence of the word "exclusive" in section 1497 that is most telling.

With respect to Tucker Act claims against the government for more than $10,000, we have held that jurisdiction lies exclusively in the Court of Federal Claims despite the absence of the word "exclusive" in 28 U.S.C. § 1491. See, e.g., Christopher Village, L.P. v. United States, 360 F.3d 1319, 1332–33 (Fed. Cir. 2004). That is because no other statutory provision provides district courts with jurisdiction over such claims. See Bowen v. Massachusetts, 487 U.S. 879, 910 n.48 (1988) ("It is often assumed that the Claims Court has exclusive jurisdiction of Tucker Act claims for more than $10,000. . . . That assumption is not based on any language in the Tucker Act granting such

exclusive jurisdiction to the Claims Court. Rather, that court's jurisdiction is 'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court."); Christopher Village, 360 F.3d at 1332–33. Here, however, the oyster growers' claims are private claims—not claims against the government—and the diversity and amount in controversy requirements of 28 U.S.C. § 1332 have been met. Therefore, the reasoning that supports exclusive jurisdiction for Tucker Act claims over $10,000 against the government does not apply to claims brought solely between diverse private parties for damages to oyster beds.

The direct legislative history for section 1497 provides no guidance on this issue. The predecessor to section 1497, 28 U.S.C. § 250a, originated as a Senate amendment to the Rivers and Harbors Act of August 30, 1935, ch. 831, 49 Stat. 1208, 1049 ("the Act"). Our review of the legislative history of this aspect of the Act has found nothing of interpretative value. See S. Rep. No. 893, 74th Cong. (1935); H.R. Rep. No. 1816, 74th Cong. (1935). The private contractors, however, argue that the historical background of oyster grower claims as presented by the Supreme Court's decision in Lewis demonstrates that the congressional intent in enacting the Act was to make the jurisdiction provided by section 1497 exclusive.

In Lewis, an oyster grower sought to enjoin a contractor for the United States from dredging a channel that would significantly impair the value of its leased oyster beds. 229 U.S. at 679. Because the oyster grower argued that the government's action would be an invasion of a private property right, the Supreme Court examined whether the dredging of navigable waterways was a taking of property without just compensation. Id. at 680–81. The Court held that rights to lands underlying navigable

waterways were subject to the sovereign's dominant right of navigation: "By necessary implication from the dominant right of navigation, title to such submerged lands is acquired and held subject to the power of Congress to deepen the water over such lands, or to use them for any structure which the interest of navigation, in its judgment, may require." Id.

The Lewis decision does nothing to disturb the common law of torts and the legal theory that a negligent private party that causes damage to another's private property is liable for the damages. Although the passage of the Act in 1935 may have created a right where none existed against the government,[3] parties have long held the right to pursue action against private parties for property damage, including negligence actions in federal district courts under diversity jurisdiction.

Finally, we note that the interpretation proposed by the private contractors raises constitutional concerns implicated by the "public rights" doctrine and the Seventh Amendment's guarantee of a right to a jury trial "in suits at common law." The "public rights" doctrine, first set forth in Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. (18 How.) 272 (1856), draws a distinction between "public" rights, the adjudication of which Congress may assign to an Article I tribunal, and "private" rights, which Congress cannot remove from judicial cognizance under Article III. See, e.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 51–55 (1989); N. Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 69–70 (1982); Murray's Lessee, 59 U.S. at 284. As the Supreme Court identified in Granfinanciera, the inquiries under the "public rights"

---

[3]     See, however, note 1, supra.

doctrine and the Seventh Amendment are the same.[4]  In this action, the oyster growers assert state tort law claims against private parties.  Although we need not decide whether such an action is "public" or "private" in nature, we note that private tort actions are quintessentially suits at common law.  An interpretation of section 1497 in which the Court of Federal Claims—an Article I tribunal—is the exclusive avenue for bringing certain private tort actions raises serious constitutional doubts.  The canon of constitutional avoidance in statutory interpretation implies that a plausible construction of section 1497 that does not raise such constitutional doubts gives better effect to congressional intent.  See Clark v. Martinez, 543 U.S. 371, 380–82 (2005) ("When deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail.").

For the foregoing reasons, we hold that section 1497 does not create exclusive jurisdiction in the Court of Federal Claims over the oyster growers' claims against private contractors for damage to oyster beds as a result of dredging operations.  The district court therefore did not lack jurisdiction over the oyster growers' claims and erred in transferring those claims under 28 U.S.C. § 1631.

---

[4]     [I]f a statutory cause of action . . . is not a "public right" for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power."  And if the action must be tried under the auspices of an Article III court, then the Seventh Amendment affords the parties a right to a jury trial whenever the cause of action is legal in nature.  Conversely, if Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury fact finder.

492 U.S. at 53–54 (citations omitted).

## C. Change of Venue

Although the district court cited 28 U.S.C. § 1404(a) as additional authority supporting the transfer of the oyster growers' claims, it did not address whether that statute is available for transfers to the Court of Federal Claims. The parties on appeal likewise cite to section 1404(a) without any discussion as to its applicability to this case. Whether section 1404(a) provides for transfers from a district court to the Court of Federal Claims is a matter of pure statutory interpretation that we review de novo. Merck, 80 F.3d at 1549.

Section 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added). Although the terms "district" and "division" are not expressly defined in Title 28, the districts and divisions of the district courts of the United States are enumerated in Chapter 5 of that title. See id. §§ 81–131. Section 1404(d) further provides for other districts not enumerated in Chapter 5 to be included in the change of venue statute. See id. § 1404(d) ("As used in this section, the term 'district court' includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term 'district' includes the territorial jurisdiction of each such court."). Notably, the Court of Federal Claims is not among the districts and divisions enumerated in Chapter 5 of Title 28, nor is it among the additional districts provided for by section 1404(d). Indeed, we fail to find any statutory support for characterizing the Court of Federal Claims as a "district or division." Accordingly, we

hold that the Court of Federal Claims is not a "district or division" to which a district court may transfer a case pursuant to 28 U.S.C. § 1404(a).

In so holding, we recognize that in Hondros v. United States Civil Service Commission, 720 F.2d 278, 299 (3d Cir. 1983), the Third Circuit held that a district court may transfer a case to the Court of Claims (predecessor to the Court of Federal Claims) under 28 U.S.C. § 1406(a), which allows for transfer to any "district or division" when there is a defect in venue. The basis for that holding was that by repealing the former provisions of 28 U.S.C. § 1406(c), which provided that a district court may transfer a case within the exclusive jurisdiction of the Court of Claims to that court, Congress could not have intended to foreclose transfer of an improperly filed case to the Court of Claims. See id. at 299 n.41 ("We cannot conclude, however, that Congress intended to handcuff the federal courts by prohibiting them from transferring a case improperly filed in the district courts to the Claims Court when the interests of justice so require."). What the Third Circuit failed to recognize, however, was that Congress provided for such a scenario by enacting the provisions that became 28 U.S.C. § 1631 in the very same act that repealed the former provisions of 28 U.S.C. § 1406(c). See Pub. L. No. 97-164, 96 Stat. 39, 55. Therefore, to the extent Hondros conflicts with our interpretation of "district or division" in the context of section 1404(a), we respectfully disagree with its analysis and decline to follow it.

For the foregoing reasons, we hold that section 1404(a) does not provide for a transfer from a district court to the Court of Federal Claims. The district court therefore erred in transferring those claims under 28 U.S.C. § 1404(a).

## III. CONCLUSION

Accordingly, we reverse the district court's order transferring the oyster growers' claims to the Court of Federal Claims and remand for further proceedings consistent with this opinion.

<u>REVERSED AND REMANDED</u>

# United States Court of Appeals for the Federal Circuit

2006-1208

FISHERMAN'S HARVEST, INC., C. JOE NELSON, JR., DORIS MAE NELSON,
VANESSA JO NELSON VALLEJO, VICKIE JO NELSON SALAZAR,
and NELSON PLAINTIFFS FISHERMAN'S HARVEST, INC.,

> Plaintiffs-Appellants,

and

CHILDRESS SEAFOOD, INC., W. F. CHILDRESS, and ALTON LEE KELLY,

> Plaintiffs-Appellants,

v.

PBS & J (formerly known as Espey, Huston & Associates, Inc.),

> Defendant,

and

BERTUCCI CONTRACTING CORPORATION,

> Defendant,

and

LUHR BROTHERS, INC.,

> Defendant,

and

BRADLEY INDUSTRIAL TEXTILES, INC.,

> Defendant-Appellee,

and

NICOLON CORPORATION (also known as Ten Cate Nicolon),

> Defendant-Appellee,

and

HUSTON & ASSOCIATES, INC.,

> Defendant,

and

WEEKS MARINE, INC.,

> Defendant/Third Party
> Plaintiff-Appellee,

v.

UNITED STATES ARMY CORPS OF ENGINEERS,

> Third Party Defendant-
> Appellee.

NEWMAN, <u>Circuit Judge</u>, dissenting.

With all respect to the concerns of this panel, I do not agree that this transfer from the district court to the Court of Federal Claims is forbidden by statute. The ultimate liability for "damages" is that of the United States, and jurisdiction has been explicitly assigned to the Court of Federal Claims. It is not required that any underlying fault on the part of the dredging operators, if there were such, be litigated first and only in the district court. Nor must such fault be shown in order for the United States to incur liability to the oyster growers.

The applicable statute, 28 U.S.C. §1497, assigns the issues arising from federally authorized dredging to the Court of Federal Claims:

> §1497. Oyster growers' damages from dredging operations. The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages to oyster growers on private or leased lands or bottoms arising from dredging operations or use of other machinery and equipment in making river and harbor improvements authorized by Act of Congress.

Recognizing this jurisdictional assignment, the district court transferred the case, citing §1497 and the authority of 28 U.S.C. §1404(a), as follows:

> §1404(a). Change of venue.
>
> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Such transfer is not dependent on whether the district court could retain jurisdiction of an issue raised in the pleadings, for §1404(a) is not subordinate to 28 U.S.C. §1631, and does not exclude transfers to the Court of Federal Claims:

§1631. Transfer to cure want of jurisdiction.

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Taken together, the district court's transfer action is within the letter of the transfer statutes, whose purpose is to facilitate judicial cognizance of disputes.

This court now holds that if the district court had jurisdiction to decide a negligence claim between the oyster farmers and the dredgers, the district court is precluded by §§1404(a) and 1631 from transfer to the Court of Federal Claims. However, as the parties point out, there may be no need to decide whether the dredgers were negligent, for it appears that any ultimate liability to the oyster growers due to federally-ordered dredging is with the United States, a liability that can be assessed only by the Court of Federal Claims. This invokes §§1497 and 1631, even on my colleagues' limited reading of §1404(a). Thus this court errs in requiring trial in the district court of part of the case, a part that all parties agree will not provide finality, whether or not the oyster farmers succeed in establishing that the dredgers were "negligent." Finality has "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979) (discussing collateral estoppel).

The district court's reliance on §1404(a) and §1497 as the bases for transfer to the Court of Federal Claims is not excluded by §1631. The purpose of §1631 was to assure

transfer authority in the event the restructuring in 1982 of the Court of Claims into two courts, appeal and trial, produced jurisdictional uncertainties. The purpose was to facilitate transfer between federal trial courts, not to require separate litigation of "issues" in different trial courts. Thus the Federal Courts Improvement Act, Pub. L. No.94-164, 96 Stat. 25 (1982), assigned to the new Federal Circuit the appellate jurisdiction of the Court of Claims, and established a separate trial court (then named the Claims Court) to handle the trial work that was previously conducted by the Court of Claims through trial "commissioners." The purpose of 28 U.S.C. §1631 (Transfer to Cure Want of Jurisdiction) was to safeguard against uncertainty and conflicts among forums and costly, duplicative litigation. Senator Robert Dole, chairman of the Senate Judiciary Subcommittee on Courts, explained:

> In recent years, much confusion has been engendered by provisions of existing law that leave unclear which of two or more Federal Courts have subject matter jurisdiction over certain categories of civil actions.

127 Cong. Rec. 23085, 23097 (1981). In further remedy of perceived deficiencies in judicial structure, the authority of the new Claims Court was enlarged from that of the predecessor Court of Claims to enable the grant of "complete relief":

> In addition, section 133 of the bill gives the new Claims Court the power to grant declaratory judgments and give equitable relief in controversies within its jurisdiction. This provision will for the first time give the court specializing in certain claims against the Federal Government the ability to grant litigants complete relief. The [Senate Judiciary] committee concluded that this provision will avoid the costly duplication in litigation presently required when a citizen seeks both damages and equitable relief against the Government.

Id. at 29860. The panel majority strays from the text and intent of Congress by permitting, indeed requiring, duplicative litigation of the issue of dredging injury for which the United States would ultimately be liable.

The Court of Federal Claims is fully authorized to decide the issues that relate to liability of the United States under §1497. My colleagues appear to deny this authority, by requiring trial of the negligence count in the district court. Indeed, it may not be necessary to decide whether the dredgers were negligent, in order for the oyster growers to obtain compensation for actual injury. Nonetheless, this court now finds lack of jurisdiction by applying §1497, and ignores the transfer grounds relied on by the district court.

Transfer to the Court of Federal Claims is not precluded even for cases in which the district court and the Court of Federal Claims both have jurisdiction, for example transfer for *forum non conveniens* as might arise under the Little Tucker Act, 28 U.S.C. §1346(a)(2), or regulatory issues where the available relief varies with the court, such as in Loveladies Harbor, Inc. v. United States, 27 F.3d 1545 (Fed. Cir. 1994), or bid protest cases, as illustrated by Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970). It is irrelevant whether the district court could have retained the case in order to decide whether the dredgers acted negligently, for the court transferred the entire case in the interest of judicial and party economy, citing the interest in avoiding redundant relitigation.

It is far from clear how this litigation could proceed in the district court to resolve the third-party complaint for monetary relief based on contracts with the United States. The plaintiffs and the third party plaintiffs have been and are being pressed into litigating duplicate protective actions -- at significant cost to them as well as to the United States -- by this unnecessary jurisdictional rigor. The district court invoked a logical and permissible solution, implementing the goals of Congress. This court's redistribution of portions of this action to separate trial forums is neither necessary nor desirable. The district court's

transfer action was within its discretionary authority and not contrary to law, and should be sustained.