NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANDREW R. SPENGLER,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2016-2662

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00794-EDK, Judge Elaine Kaplan.

---

Decided: May 10, 2017

---

ANDREW R. SPENGLER, Fort Worth, TX, pro se.

ALEXIS J. ECHOLS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

PER CURIAM.

Andrew R. Spengler ("Spengler") seeks review of the decision of the United States Court of Federal Claims ("the trial court") dismissing his complaint without prejudice for lack of subject matter jurisdiction and declining to transfer the case to a district court. *See Spengler v. United States*, 127 Fed. Cl. 597 (2016) ("*Dismissal Order*"). He also appeals from the order of the trial court denying Spengler's motion to alter or amend the judgment and/or for relief from judgment. *See Spengler v. United States*, 128 Fed. Cl. 338 (2016) ("*Post-judgment Order*"). Because the trial court correctly concluded that it lacked jurisdiction, properly decided not to transfer the case, and did not abuse its discretion in denying Spengler's motion to alter or amend the judgment and/or for relief from judgment, we *affirm*.

BACKGROUND

In 1930 and 1932, the Department of Justice ("DOJ") created and established operating procedures for the prison commissary system and authorized two funds that are often referred to as the "Prisoners Trust Fund" and the "Commissary Fund" that are controlled by the Bureau of Prisons ("BOP"). *Dismissal Order*, 127 Fed. Cl. at 599–601. The commissaries allow inmates to "purchase items such as hygiene products, postage supplies, over the counter medicine, and snacks." *Id.* at 601 (citation omitted). The revenues for the Commissary Fund are generated through the sales of goods at prison commissaries; on the other hand, the Prisoners Trust Fund contains inmates' personal money brought in by, sent to, or earned by them. *Id.* (citation omitted).

Spengler is currently serving a 15-year sentence for Conspiracy to Deprive Civil Liberties and Deprivation of Civil Rights under Color of Law, housed at the Federal Correctional Institution in Fort Worth, Texas ("FCI Fort Worth"), and projected to be released on March 16, 2020. *Id.* at 599.

On July 27, 2015, Spengler filed suit against the United States government in the trial court alleging that he is a beneficiary of the Commissary Fund, which he argues is a trust fund, and that the government, through BOP, has breached its fiduciary duties by misusing monies from the Commissary Fund. *Id.* Spengler alleged that the government unlawfully diverted the Commissary Fund's monies to pay for, *inter alia*, inmate computer and telephone systems and various other provisions for inmates that are designed to work with the inmate computer and telephone systems, such as an electronic law library, fingerprint scanners, mailing labels, and mp3 players. *Id.* Spengler sought relief in the forms of injunction and money damages, requesting, *inter alia*, accounting of the Commissary Fund, destruction of personal data collected through the inmate computer system, restoration of the allegedly misused funds to the Commissary Fund, and an award of damages for the loss of revenue that would have been earned but for the alleged misuse of the Commissary Fund. *Id.*

The government moved to dismiss Spengler's complaint for lack of subject matter jurisdiction, arguing that Spengler's breach of fiduciary duty claim sounds in tort, which does not lie under the Tucker Act. *Id.* at 599–600. Spengler responded that he is not asserting a tort claim, but a claim for money damages that arises out of a statute that classifies the Commissary Fund as a trust fund, 31 U.S.C. § 1321(a)(22), and DOJ Circular No. 2244, Rules Governing the Control of Prisoner Funds at the Several Penal and Correctional Institutions (Jan. 1, 1932) ("DOJ Circular 2244"), which describes prison commissaries' operating procedures. *Id.* The trial court requested supplemental briefing from the government and Spengler addressing the threshold issue whether 31 U.S.C. § 1321(a)(22) imposes fiduciary responsibilities on the government. *Spengler v. United States*, 1:15-cv-00794-EDK (Fed. Cl. Feb. 22, 2016), ECF No. 21.

On July 19, 2016, the trial court dismissed Spengler's case without prejudice for lack of subject matter jurisdiction. *Dismissal Order*, 127 Fed. Cl. at 598–99. The trial court concluded that classification of the Commissary Fund as a "trust" alone is "not sufficient to establish that Congress intended to impose specific fiduciary obligations on the United States that would subject it to a claim for monetary damages for their breach." *Id.* at 601. The trial court noted that nothing in the legislative history of § 1321 indicates the government's assumption of fiduciary duties, and that its conclusion is also supported by DOJ Circular 2244, DOJ Federal BOP, Program Statement No. 4500.11, Trust Fund/Deposit Fund Manual (April 9, 2015) ("BOP Program Statement 4500.11"), and a memorandum from the DOJ Office of Legal Counsel, Fiduciary Obligations Regarding Bureau of Prisons Commissary Fund, 19 Op. O.L.C. 127, 1995 WL 917141 (1995) ("DOJ OLC Memo"). *Id.* at 601–02. The trial court distinguished this case from *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994), which was cited by Spengler, noting that the plaintiffs in *Washington* sought injunctive relief, not money damages. *Id.* at 602–03.

The trial court considered whether a transfer to a district court would be proper pursuant to 28 U.S.C. § 1631, but determined not to transfer the case. *Id.* at 603, 605. The trial court found that Spengler failed to exhaust administrative remedies and that he failed to establish that he is prevented from pursuing administrative remedies due to the alleged obstructions by BOP. *Id.*

On September 26, 2016, Spengler filed a post-judgment motion to alter or amend the judgment and/or for relief from judgment under Rules of Court of Federal Claims ("RCFC") 59 and 60(b). In support of his motion, Spengler submitted (1) a settlement agreement resulting from *Washington*, pursuant to which the government reimbursed $4,000,000 to the Commissary Fund; and (2) the record of two grievances filed by Spengler allegedly

showing administrative exhaustion. On the same day, the trial court denied Spengler's post-judgment motion for being untimely and failing to establish the existence of grounds for relief from judgment. *Post-judgment Order*, 128 Fed. Cl. at 340. The trial court noted that the settlement agreement in *Washington* is irrelevant to its previous legal conclusion because *Washington* did not address Tucker Act jurisdiction, and that the two grievances were not "newly discovered evidence" and "would not have produced a different result if presented before the original judgment." *Id*. at 343–45.

Spengler timely appealed from the decision of the trial court.[1] We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review dismissal of a complaint by the trial court for lack of jurisdiction *de novo, Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000), and we review a determination not to transfer a case under 28 U.S.C. § 1631 *de novo* as well, *see Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374 (Fed. Cir. 2007). We review denial of motions to alter or amend a judgment and for relief from judgment for abuse of discretion. *See Matos by Rivera v.*

---

[1] After the parties' briefing had been completed and Spengler's motion to allow telephonic oral argument had been denied, Spengler filed a "Supplemental Memorandum" requesting appointment of counsel by this court. *Spengler v. United States*, No. 2016-2662 (Fed. Cir. Apr. 19, 2017), ECF No. 34. Unlike in criminal matters, "[i]n civil proceedings . . . the right to counsel is highly circumscribed, and has been authorized in exceedingly restricted circumstances." *Lariscey v. United States*, 861 F.2d 1267, 1270 (Fed. Cir. 1988). Irrespective of whether Spengler's request was proper in form or timing, Spengler's request is denied.

*Sec'y of Dep't of Health & Human Servs.*, 35 F.3d 1549, 1551–52 (Fed. Cir. 1994) (relief from judgment); *Mass. Bay Transp. Auth. v. United States*, 254 F.3d 1367, 1378 (Fed. Cir. 2001) (alter or amend judgment).

A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Brant v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). Although a *pro se* plaintiff's complaint is held to a less stringent standard than those prepared by counsel, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), *pro se* litigants are not excused from meeting jurisdictional requirements, *see Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

Spengler raises three main issues on appeal. First, Spengler argues that the trial court has subject matter jurisdiction because he is a beneficiary of the Commissary Fund, which is a statutory trust controlled by the government, and the government breached its fiduciary duty by improperly diverting monies from the Commissary Fund to subsidize costs of confinement. Second, Spengler argues that he is allowed to bring suit in a court because he has exhausted administrative remedies, and to the extent he has not, he was obstructed from doing so, excusing him from completing the required grievance filings processes. Third, Spengler argues that the trial court erred in denying his post-judgment motion to alter or amend judgment and/or for relief from judgment as untimely. We discuss each issue in turn.

## I

"Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity . . . , together with a claim falling within the terms of the waiver . . . ." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted). "The Tucker Act contains such a waiver." *Id.* (citation omitted). The trial court has juris-

diction pursuant to the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act "is itself only a jurisdictional statute," *United States v. Testan*, 424 U.S. 392, 398 (1976), and "does not create[] a substantive right enforceable against the Government by a claim for money damages," *White Mountain*, 537 U.S. at 472.[2] Therefore, "[a] substantive right must be found in some other source of law," and "[t]he claim must be one for money damages against the United States." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) ("*Mitchell II*"); *see Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) (noting that the relevant source of law must be "money-mandating").

In particular, as relevant here, finding a trust relationship that may give rise to a Tucker Act claim must "train on specific rights-creating or duty-imposing statutory or regulatory prescriptions," without which even the "undisputed existence of a general trust relationship" between the government and the plaintiff "alone is insufficient to support jurisdiction." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) ("*Navajo I*") (internal quotation marks and citation omitted). Therefore, a plaintiff must "establish that the United States has accepted a particular fiduciary duty" by "identify[ing] statutes or regulations that both impose a specific obliga-

[2]  The Tucker Act, 28 U.S.C. § 1491(a)(1), and the Indian Tucker Act, 28 U.S.C. § 1505, have been described as "companion statute[s]," and the jurisdictional frameworks of the claims pursuant to them are no different. *White Mountain*, 537 U.S. at 472.

tion on the United States and bear the hallmarks of a conventional fiduciary relationship." *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 301 (2009) ("*Navajo II*")) (internal quotation marks omitted). "If that threshold is passed, the court must then determine whether the relevant source of substantive law 'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] impose[s].'" *Navajo I*, 537 U.S. at 506 (citation omitted) (alternations in original). We conclude that Spengler has failed to establish that the government has assumed such fiduciary duty here.

Spengler points to 31 U.S.C. § 1321(a)(22), (b)(1) and DOJ Circular 2244 as the sources of substantive law establishing the government's fiduciary duty for his Tucker Act claim. 31 U.S.C. § 1321, entitled "Trust funds," provides in relevant part:

> (a) The following are classified as trust funds:
>
> . . . .
>
> (21) Funds of Federal prisoners.
>
> (22) Commissary funds, Federal prisons.
>
> . . . .
>
> (b)(1) Amounts (except amounts received by the Comptroller of the Currency . . . ) that are analogous to the funds named in subsection (a) of this section and are received by the United States Government as trustee shall be deposited in an appropriate trust fund account at the Treasury. Except as provided in paragraph (2), amounts accruing to these funds are appropriated to be disbursed in compliance with the terms of the trust.

31 U.S.C. § 1321(a), (b)(1). Section 1321(a) lists over ninety funds "classified as trust funds," including "Indian

moneys, proceeds of labor, agencies, schools, and so forth." *Id.* at § 1321(a)(20). DOJ Circular 2244 reads in relevant part:

> 16. The funds for the operation of the several "Institution Commissaries" shall be considered as one consolidated fund and upon order of the Director, Bureau of Prisons, may be allotted to the several institutions as a capital fund for the operation of the "Institutional Commissary" . . . .

> 19. For the procurement of articles not regularly issued as part of the institutional administration there is hereby authorized the establishment of an "Institutional Commissary" through which all articles shall be procured and charged to the fund entitled "Commissary Fund, Federal Prisons, Trust Fund".

> 41. With approval of the Director, Bureau of Prisons, the "Welfare Fund" may be disbursed on written order of the Warden for any purpose accruing to the benefit of the inmate body, as a whole, such as amusements, education, library, or general welfare work.

> DOJ Circular 2244, ¶¶ 16, 19, 41.

Pursuant to 31 U.S.C. § 1321(a)(22), (b)(1) and DOJ Circular 2244, ¶ 41, Spengler argues, the Commissary Fund, which he calls a "trust corpus," is held in "trust" by the government for "the benefit of the inmate body." Appellant's Br. 3–4. Spengler contends that § 1321(a) imposes a fiduciary duty on the government that may give rise to a Tucker Act claim with respect to the enumerated § 1321(a) "trust funds." Spengler argues that the complete control over the Commissary Fund by BOP as prescribed in DOJ Circular 2244 and BOP Program Statement 4500.11 supports a finding of a fiduciary duty of the government in this case. The "fair inference"

standard discussed in *White Mountain*, according to Spengler, supports finding a trust relationship and a "fair inference" that the government is liable in damages for breach, thus, supporting a Tucker Act claim for the misuse of the Commissary Fund.

Spengler also contends that the trial court erred in distinguishing this case from Indian trust cases due to the lack of the unique historical context present in the Indian trust cases, and he cites *Washington* for the proposition that a trust relationship between the government and federal inmates has already been found with respect to the Commissary Fund under § 1321(a)(22) by the Sixth Circuit. Spengler alleges that the breach of fiduciary duty found in *Washington* and the resulting $4,000,000 settlement reimbursement by the government to the Commissary Fund support the money-mandating requirement of his Tucker Act claim. Spengler also argues that 18 U.S.C. § 4043 Note[3] bears an additional "trust hallmark." Appellant's Reply 3 n.2.

---

[3]    The statutory note provides:

For fiscal year 1996 and each fiscal year thereafter, amounts in the Federal Prison System's Commissary Fund, Federal Prisons, which are not currently needed for operations, shall be kept on deposit or invested in obligations of, or guaranteed by, the United States and all earnings on such investment shall be deposited in the Commissary Fund.

18 U.S.C. § 4043 Note, Deposit or Investment of Excess Amounts in Federal Prison Commissary Fund, Pub. L. No. 104-91, title I, § 101(a), 110 Stat. 11 (1996), *as amended by* Pub. L. No. 104-99, title II, § 202, 110 Stat. 37 (1996).

The government responds that the trial court lacks subject matter jurisdiction because the substantive law pointed to by Spengler does not impose fiduciary duties on the government, constitute an express waiver of sovereign immunity, or give rise to monetary relief with respect to the Commissary Fund. The government further argues that the Supreme Court and this court have established that without an express statutory or regulatory assumption of particular fiduciary duty by the government, such duty cannot be inferred from a mere designation of the government acting as a statutory trustee, a creation of a "bare trust," or common law principles of trust.

In particular, the government contends that the relationship between the government and inmates with respect to the Commissary Fund does not bear the hallmarks of a conventional fiduciary relationship and that the trial court properly distinguished *Washington* from this case because it was not based on Tucker Act jurisdiction.

We agree with the government that Spengler has failed to establish that the government is under a fiduciary duty in managing and using the Commissary Fund monies that would give rise to a Tucker Act claim. The first step in finding a trust relationship in the Tucker Act context is finding particular "specific rights-creating or duty-imposing statutory or regulatory prescriptions" that "bear[] the hallmarks of conventional fiduciary relationship." *Navajo II*, 556 U.S. at 301–02 (internal quotation marks and citation omitted). If and only if this first step is satisfied, can "trust principles (including any such principles premised on 'control') play a role in 'inferring that the trust obligation [is] enforceable by damages.'" *Id.* (citation omitted) (alteration in original). Spengler's claim fails at the first step.

Neither § 1321(a)(22), (b)(1) nor DOJ Circular 2244 qualifies as such statutory or regulatory prescriptions.

Subsections 1321(a)(22), (b)(1) provide a mere designation of the Commissary Fund as a "trust" fund, which, even when read in conjunction with DOJ Circular 2244 ¶ 41, is inadequate to create a trust relationship sufficient to impose upon BOP a fiduciary duty regarding the Commissary Fund. The substantive law pointed out by Spengler creates, *if anything*, nothing more than a "bare" or "limited" trust relationship that the Supreme Court held to be insufficient to give rise to a Tucker Act claim. *Mitchell I*, 445 U.S. at 542; *Navajo II*, 556 U.S. at 301–02; *see also Hopi*, 782 F.2d at 667–68 (noting that the specific relevant provisions must be "trust-evoking" for the courts to proceed with further trust law analysis in Tucker Act trust cases).

Spengler's selective reading of the relevant statutes and regulations is unpersuasive. Instead of being supportive of Spengler's control theory of common law fiduciary duty, DOJ Circular 2244 as a whole actually establishes that the Commissary Fund was not intended to be a fund held by BOP under fiduciary obligations to inmates. As noted by the government, other paragraphs of DOJ Circular 2244 establish that BOP can spend the Commissary Fund monies for "the operation of the 'Institutional Commissary,'" and is not required to expend the fund monies only for the sole benefit of inmates. DOJ Circular 2244, ¶ 16. DOJ Circular 2244 gives BOP authority to spend the Commissary Fund monies in a way that is contrary to what a fiduciary could do.

Spengler's reliance on a statutory note under 18 U.S.C. § 4043 to find the hallmarks of a trust relationship is equally unavailing. First, the statutory note identified by Spengler gives no indication of the government's assumption of a fiduciary duty for the sole benefit of inmates. Furthermore, a different statutory note under the same section authorizes the use of the Commissary Fund monies for operational expenditures not necessarily in the best interest of inmates. 18 U.S.C. § 4043 Note,

Pub. L. No. 105-277, Oct. 21, 1998, 122 Stat. 2681 (authorizing BOP to make expenditures out of the Commissary Fund, including "security-related" and operational expenditures for the "Inmate Telephone System").[4] This statutory note undermines Spengler's contention that the use of the Commissary Fund monies for "prison security" or "cost of confinement" constitutes a misuse in violation of the "trust." Appellant's Br. 4.

As noted by the government, additional sources of authority also indicate that the Commissary Fund is not a

---

[4]    This statutory note provides:

For fiscal year 1999 and thereafter, the Director of the Bureau of Prisons may make expenditures out of the Commissary Fund of the Federal Prison System, *regardless of whether any such expenditure is security-related*, for programs, goods, and services for the benefit of inmates (to the extent the provision of those programs, goods, or services to inmates is not otherwise prohibited by law), including—

(1) the installation, operation, and maintenance of the Inmate Telephone System;

(2) the payment of all the equipment purchased or leased in connection with the Inmate Telephone System; and

(3) the salaries, benefits, and other expenses of personnel who install, operate, and maintain the Inmate Telephone System.

18 U.S.C. § 4043 Note, Expenditures; Inmate Telephone System, Pub. L. No. 105-277, div. A, § 101(b) [title I, § 108], 122 Stat. 2681 (1998) (emphasis added).

"trust corpus" held for inmates as beneficiaries, but is intended to provide "a mechanism through which inmates may secure items not generally available through the prisons." DOJ OLC Memo, 1995 WL 917141, at *7–8 ("31 U.S.C. § 1321 and the rules set forth in Circular No. 2244 pertaining to the Commissary Fund do not impose fiduciary obligations on the BOP with respect to the Commissary Fund."); *see* BOP Program Statement 4500.11, at 16 (describing that the use of Commissary Fund services is a "privilege").

Similarly, Spengler's reliance on *Short* is also inapposite for ignoring the full context in which that case was decided. In *Short*, the plaintiffs brought suit against the government claiming a share of certain proceeds of the Hoopa Valley Reservation. *Short*, 719 F.2d at 1133–34. This court, based on then-newly-decided *Mitchell II*, analyzed the jurisdictional requirements under the Indian Tucker Act, relying primarily on different statutory provisions, 25 U.S.C. §§ 405–406, that are specific to Indians. *Id.* As clarified later by the Supreme Court in *Navajo I*, *White Mountain*, and *Navajo II* and this court in *Hopi*, finding a fiduciary duty requires the substantive law to prescribe something more than a mere designation of "trust." *See Navajo I*, 537 U.S. at 506; *White Mountain*, 537 U.S. at 473; *Navajo II*, 556 U.S. at 293–94; *Hopi*, 782 F.2d at 667–68.

Spengler's reliance on *Washington* is also misplaced. First and foremost, *Washington* is not binding on this court and did not involve Tucker Act jurisdiction; and again, the "trust" designation under § 1321(a)(22) is insufficient to create Tucker Act jurisdiction. In addition to the later-decided Supreme Court cases discussed above, the later-enacted law specifically authorizes "security-related" expenses from the Commissary Fund, 18 U.S.C. § 4043 Note, Pub. L. No. 105-277, Oct. 21, 1998, 122 Stat. 2681.

The statutory and regulatory prescriptions concerning the Commissary Fund therefore cannot be understood as a specific assumption of fiduciary duty by the government that gives rise to a Tucker Act claim.

## II

We next discuss whether the trial court properly declined to transfer this case to a district court.

When a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631. Pursuant to § 1631, the transferor court must "determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction." *See Fisherman's Harvest*, 490 F.3d at 1374.

Spengler argues that he has exhausted administrative remedies, and, to the extent he has not, he was obstructed from doing so. Spengler contends that he has completed at least two grievance processes that were properly presented as "new evidence" in his post-judgment motion proving that he has exhausted administrative remedies. Spengler also alleges that he had filed additional grievances in an attempt to exhaust administrative remedies, which had been thwarted, and he suffered from delays and obstructions by BOP in his grievance filings, which "nullifies" the administrative exhaustion requirement. Appellant's Br. 24–30. In support, Spengler cites circuit court decisions, such as *Small v. Camden Cty.*, 728 F.3d 265, 273 (3d Cir. 2013) (collecting cases), which discuss that administrative remedies are considered "unavailable" when the prison official fails to timely respond to a properly filed grievance. Appellant's Br. 25–26.

The government argues that pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner bringing suit in a court concerning any complaint

associated with incarceration must exhaust administrative remedies, citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Because Spengler failed to do so, it asserts, the suit should not be transferred to a district court. Appellee's Br. 27–28. Relying on a declaration of a BOP administrative remedy specialist, the government notes that, although Spengler did initiate several grievance processes, he failed to complete them. As to the two completed grievance filings, the government asserts that they do not constitute "new evidence" because, although Spengler had initiated them and knew that they were either completed or near completion, he failed to present them prior to judgment. Appellee's Br. 30. Nonetheless, the government argues, in any event, those two grievances do not go to the "gravamen" of Spengler's claim that BOP is misusing the Commissary Fund monies for the inmate computer and telephone systems. Appellee's Br. 31–34. The government also contends that Spengler is not excused from completing the grievance processes because, other than making general complaints, he failed to establish that he was actually prevented from completing the grievance processes he had started but had not completed.

We conclude that the trial court properly declined to transfer the case to a district court, first, because Spengler failed to exhaust administrative remedies, and second, because he failed to establish that his suit belongs in a district court. Regarding the former, the trial court observed that the claims made by Spengler appear to include general complaints concerning prison conditions. *Dismissal Order*, 127 Fed. Cl. at 603–04. As such, the trial court concluded that administrative remedies should have been exhausted for him to proceed in a district court pursuant to PLRA, and that, because Spengler had failed to follow the instructions to complete the grievance processes, he had not exhausted administrative remedies. *Id.* at 605. The court noted that, even assuming Spengler's general allegations regarding delays and lack of

responses caused by FCI Fort Worth were true, he has not shown that he was prevented from completing the grievance processes. *Id.* We agree with the trial court.

Moreover, Spengler has failed to establish that his suit belongs in a district court. Spengler filed suit against the United States government, but other than alleging that the government breached the "statutory trust" premised on the Tucker Act waiver of sovereign immunity, Spengler does not rely on any other cause of action or independent source of waiver of sovereign immunity that could allow him to sue the United States government in a district court.

Spengler's complaint, even viewed with the leniency afforded to a *pro se* plaintiff, does not allege claims under any other cause of action or waiver of sovereign immunity, and we decline to refashion Spengler's current "breach of trust" claim against the United States government under the Tucker Act into something else in an attempt to supply district court jurisdiction. We therefore conclude that transfer of this case to a district court is not warranted.

## III

Finally, we discuss whether the trial court abused its discretion in denying Spengler's post-judgment motion.

"An abuse of discretion exists when, *inter alia*, the lower court's decision was based on an erroneous conclusion of law or on a clearly erroneous finding of fact." *Matos*, 35 F.3d at 1552. We do not find such error by the trial court here.

Spengler argues that the "prison mailbox rule" governs the filing dates in this case and that "due process" and "notice" concerns mandate that the post-judgment motion filing date be calculated from the date he actually received a copy of the judgment. Appellant's Br. 19–20 (citing *Houston v. Lack*, 487 U.S. 266 (1988)). Spengler

also argues that the record of the two completed grievances constituted "new evidence" or a "mistake" allowing him to file the motion for relief from judgment. Appellant's Br. 23. In reply, Spengler argues that the government failed to respond to his due process and notice arguments.

The government notes that Spengler's argument for calculating the post-judgment motion filing date from the date of receipt is without support, and that the "prison mailbox rule" does not support his argument and only allows that "a document filed by a *pro se* prisoner is deemed filed at the time he delivers it to prison authorities to be sent to the court." Appellee's Br. 37. The government argues that Spengler's motion was indeed untimely, and the trial court did not abuse its discretion in denying Spengler's post-judgment motion as untimely.

We agree with the government that the trial court did not abuse its discretion. The court noted that Spengler's arguments regarding the post-judgment filing date calculation were unsupported by the language of the rule, *i.e.*, "no later than 28 days after the entry of judgment," and case law regarding the "prison mailbox rule." *Post-judgment Order*, 128 Fed. Cl. at 342. The court further determined that, at any rate, its conclusion in the dismissal order would not have changed even if the newly submitted documents by Spengler were to be considered. *Id.* at 343–44. The court also discussed in detail whether Spengler's motion for relief from judgment would be warranted based on the alleged "new evidence," "mistake," or any other ground, but concluded that no ground for relief existed. *Id.* at 342–45. We find no error.

As the government and the court noted, Spengler's filing date calculation from the date of receipt of judgment is without support, and Spengler has failed to show that his case satisfies any of the grounds for relief from judgment. Spengler's arguments rest on incorrect assumptions regarding applicable laws and rules, and the trial

court did not abuse its discretion in denying Spengler's motion to alter or amend judgment and/or for relief from judgment. *See Claude E. Atkins Enters. Inc., v. United States*, 899 F.2d 1180, 1183–85 (Fed. Cir. 1990).

## CONCLUSION

We have considered Spengler's other arguments but find them unpersuasive. For the foregoing reasons, we affirm the decisions of the trial court.

## **AFFIRMED**