# United States Court of Appeals
# for the Federal Circuit

---

**THE HOPI TRIBE,**
**a federally recognized Indian Tribe,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5018

---

Appeal from the United States Court of Federal Claims in No. 1:12-CV-00045, Judge Lawrence J. Block.

---

Decided: April 2, 2015

---

MICHAEL DAVID GOODSTEIN, Hunsucker Goodstein PC, Washington, DC, argued for plaintiff-appellant.

ELLEN J. DURKEE, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ROBERT G. DREHER.

---

Before LOURIE, CHEN, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

The Hopi Tribe filed suit against the United States in the Court of Federal Claims seeking damages to cover the cost of providing safe drinking water on the Hopi Reservation. In order to invoke the trial court's jurisdiction, the Hopi Tribe must identify a statute or regulation imposing a specific obligation on the United States to provide adequate drinking water that would give rise to a claim for money damages. Because the Court of Federal Claims properly concluded that the Hopi Tribe failed to identify any source for a money-mandating obligation, we affirm.

I

The Hopi Tribe is a federally recognized Indian tribe that occupies a reservation of land in northeastern Arizona. President Chester Arthur first established the reservation by executive order in 1882 (the Executive Order). The Executive Order declared the land would be "withdrawn from settlement and sale, and set apart for the use and occupancy of the [Hopi] and other such Indians as the Secretary of the Interior may see fit to settle thereon." *See* I Charles J. Kappler, *Indian Affairs: Laws and Treaties* 805 (1904). Congress ratified the Executive Order in the Act of July 22, 1958, Pub. L. No. 85–547, 72 Stat. 403 (1958). The Act provides that:

> [L]ands described in the Executive order dated December 16, 1882, are hereby declared to be held by the United States in trust for the Hopi Indians and such other Indians, if any, as heretofore have been settled thereon by the Secretary of the Interior pursuant to such Executive order.

*Id.*

The present dispute relates to the quality of drinking water on the Hopi Reservation. The public water systems on the reservation rely on groundwater drawn from subsurface layers of water-bearing rock. The Hopi Tribe alleges that the public water systems serving five com-

munities on the eastern portion of the reservation contain unsafe levels of arsenic that exceed the federally allowed maximum. *See* 40 C.F.R. § 141.62 (setting a maximum contaminant level of 10 micrograms per liter). Arsenic is a toxic chemical that occurs naturally in rock and soils. Office of Ground Water and Drinking Water, Envt'l Prot. Agency, Complying With the Revised Drinking Water Standard for Arsenic: Small Entity Compliance Guide 3 (August 2002), *available at* http://water.epa.gov/lawsregs/rulesregs/sdwa/arsenic/Compliance.cfm. According to the Hopi Tribe, arsenic can cause bladder, lung, and skin cancer; as well as harm to the nervous system, heart, and blood vessels.

The Hopi Tribe alleges the United States funded and provided technical assistance for the construction of many of the wells that supply contaminated groundwater. Currently, the Hopi Tribe owns and operates the public water systems serving four of the affected communities—Mishongnovi, Polacca, Sipaulovi, and Shungopavi. The Department of the Interior, Bureau of Indian Affairs (BIA), owns and operates the system serving the fifth community, Keams Canyon.

The Hopi Tribe filed a complaint against the United States in the Court of Federal Claims seeking damages to cover the cost of providing alternative sources of drinking water in all five communities. The Court of Federal Claims dismissed the complaint, finding the Hopi Tribe failed to establish jurisdiction under the Indian Tucker Act. The Court of Federal Claims also denied the Hopi Tribe's request for jurisdictional discovery. The Hopi Tribe appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review de novo a grant or denial of a motion to dismiss for lack of jurisdiction. *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014). "A plaintiff

bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010).

The Court of Federal Claims' jurisdiction over suits against the United States is limited by the doctrine of sovereign immunity. The United States may not be sued without its consent. *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009) (*Navajo II*). The United States has waived sovereign immunity in various statutes, including the Indian Tucker Act. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (*Mitchell II*). The Indian Tucker Act provides that the Court of Federal Claims shall have jurisdiction over claims against the United States by Indian tribes:

> [W]henever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band, or group.

28 U.S.C. § 1505. The final clause—"one which otherwise would be cognizable"—refers to the waiver of sovereign immunity in the Tucker Act, which gives the Court of Federal Claims jurisdiction over any claim "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

Although the Indian Tucker Act waives sovereign immunity by granting jurisdiction over certain claims, it does not itself create any substantive rights. *Navajo II*, 556 U.S. at 290. The Indian tribe must assert a claim arising out of other sources of law specified in the Act,

such as a statute or contract. *Id.* And not any claim arising out of these sources of law will do. "The claim must be one for money damages against the United States . . . and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for damages sustained." *Mitchell II*, 463 U.S. at 216–17 (citations and internal quotation marks omitted).

Accordingly, the Supreme Court has established a two-part test for determining jurisdiction under the Indian Tucker Act. First, the claimant "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed to faithfully perform those duties." *Navajo II*, 556 U.S. at 290. Second, "[i]f that threshold is passed, the court must then determine whether the substantive source of law can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] impose[s]." *Id.* at 290–91 (alterations in original) (internal quotation marks omitted).

At the first step, a statute or regulation that recites a general trust relationship between the United States and the Indian People is not enough to establish any particular trust duty. *United States v. Mitchell*, 445 U.S. 535, 542–44 (1980) (*Mitchell I*) (finding a statutory provision declaring land to be held "in trust for the sole use and benefit of the [Indian owner]" did not by virtue of using trust language impose any specific duty to manage timber resources on the land). "[T]he organization and management of the trust is a sovereign function subject to the plenary authority of Congress." *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2323 (2011). Accordingly, the United States is only subject to those fiduciary duties that it specifically accepts by statute or regulation. *Id.* at 2325; *United States v. Navajo Nation*, 537 U.S. 488,

506 (2003) (*Navajo I*) ("[T]he analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions.").

To establish that the United States has accepted a particular fiduciary duty, an Indian tribe must identify statutes or regulations that both impose a specific obligation on the United States and "bear[] the hallmarks of a conventional fiduciary relationship." *Navajo II*, 556 U.S. at 301 (internal quotation marks omitted). In *Mitchell II*, the Supreme Court addressed statutes and regulations granting the Secretary of the Interior the exclusive authority to sell or approve the sale of timber on allotted Indian lands. 463 U.S. at 220. The statutes and regulations detailed "comprehensive responsibilities of the Federal Government in managing the harvesting of Indian timber," *id.* at 222 (internal quotation marks omitted), which addressed "virtually every aspect of forest management," *id.* at 220. Further, the statute required the Secretary to consider "the needs and best interests of the Indian owner and his heirs" and to return proceeds from the sales to the Indian owners or "dispose[] of [them] for their benefit." *Id.* at 224; *see* 25 U.S.C. § 406(a). Based on this trust-evoking language and the statutory and regulatory prescriptions giving the United States "full responsibility" over Indian resources, the Supreme Court found that Congress had accepted a fiduciary duty to manage timber resources according to those specific prescriptions. *Mitchell II*, 463 U.S. at 224–25.

Similarly, in *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475 (2003), the Supreme Court inferred that Congress accepted a fiduciary duty to preserve improvements to Indian land that it actually used. A statute simultaneously declared the land to be "held by the United States in trust" and authorized the United States to use the land exclusively. *Id.* This combination evoked the "commonsense assumption," confirmed by

principles of trust law, that "a fiduciary actually administering trust property may not allow it to fall into ruin on his watch." *Id.* Thus, by using trust language in conjunction with an authorization of plenary control of the land, Congress clearly accepted a fiduciary duty to exercise that authority with the care charged to a trustee at common law.

Although the Supreme Court in *White Mountain Apache* "looked to common-law principles to inform [its] interpretation of [the] statute . . . [,]" *Jicarilla*, 131 S. Ct. at 2325, it does not stand for the proposition that in every case "express trust plus actual government control equals enforceable trust duties" according to common-law principles. *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 896 (D.C. Cir. 2014). The Supreme Court used common-law trust principles in a more limited fashion. It referred to common-law trust principles because the statutory language evoked them, by combining trust language and authorization to use the land in the same provision. The Supreme Court thus inferred that Congress intended to accept the common-law duty of a trustee to preserve the land that it actually administers. *See White Mountain Apache*, 537 U.S. at 475. As the Supreme Court's subsequent decisions make clear, common-law trust duties standing alone, including those premised on control, are not enough to establish a particular fiduciary duty of the United States. *See Navajo II*, 556 U.S. at 302 ("Because the Tribe cannot identify a specific, applicable, trust-creating statute or regulation that the Government violated . . . [,] neither the Government's 'control' over [trust resources] nor common-law trust principles matter."); *Jicarilla*, 131 S. Ct. at 2325 ("The government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute.").

At the second step of the jurisdictional analysis, however, common-law trust principles come into play. If the

Indian tribe identifies a specific duty, and that duty "bears the hallmarks of a 'conventional fiduciary relationship' . . . *then* trust principles (including any such principles premised on 'control') could play a role in 'inferring that the trust obligation [is] enforceable by damages.'" *Navajo II*, 556 U.S. at 301 (quoting *White Mountain Apache*, 537 U.S. at 473, 477) (alteration in original). Indeed, the Supreme Court has stated that when a statute establishes specific fiduciary obligations, "it naturally follows that the Government should be liable in damages for the breach of its fiduciary duties. It is well established that a trustee is accountable in damages for breaches of trust." *Mitchell II*, 463 U.S. at 226 (citing Restatement (Second) of the Law of Trusts §§ 205–12 (1959)).

## III

The Hopi Tribe alleges the United States has a fiduciary duty to ensure adequate water quality on the Hopi Reservation. The Hopi Tribe points to several sources of law to establish this duty: (1) the Executive Order of 1882 and the Act of 1958, as interpreted under the *Winters* doctrine; and (2) other scattered provisions authorizing various agencies to promote safe drinking water on Indian reservations. Because we find that these provisions do not establish a fiduciary duty to ensure adequate drinking water, we affirm the Court of Federal Claims' dismissal for lack of jurisdiction.

Neither the Act of 1958 nor the Executive Order of 1882 refers to drinking water on the reservation, much less instructs the United States to manage drinking water quality. Instead, the trust language in the Act of 1958, which incorporates the Executive Order of 1882, is similar to the limited trust language at issue in *Mitchell I*, 445 U.S. at 541–42. *Compare* Pub. L. 85-547, sec. 1 (setting aside land "to be held by the United States in trust for the Hopi Indians"), *with* 25 U.S.C. § 348 (declaring that "the

United States does and will hold the land thus allotted . . . in trust for the sole use and benefit of the Indian [allottee]"). The Supreme Court found in *Mitchell I* that such "bare" trust language is not sufficient to establish a fiduciary duty to manage resources on the land. *Mitchell I*, 445 U.S. at 541–42. The same is true of the bare trust language here: it does not establish any particular fiduciary duty to manage water resources on the land.

The Hopi Tribe asks us to read the Act of 1958 in light of the *Winters* doctrine to find fiduciary duties regarding water quality on the reservation. Under the *Winters* doctrine, also known as the reserved-water-rights doctrine, when the United States reserves land for an Indian tribe, it also by implication "reserves [the] amount of water necessary to fulfill the purpose of the reservation." *Cappaert v. United States*, 426 U.S. 128, 141 (1976). This reserved water right gives the United States the power to exclude others from subsequently diverting waters that feed the reservation. *See Winters v. United States*, 207 U.S. 564, 577–78 (1908) (upholding injunction granted to United States in suit to prevent private parties from building dams that diverted waters of the Milk River from an Indian reservation). In some circumstances, it may also give the United States the power to enjoin others from practices that reduce the quality of water feeding the reservation. *See United States v. Gila Valley Irrigation Dist.*, 920 F. Supp. 1444, 1454–55 (D. Ariz. 1996) (enjoining upstream junior appropriators from practices that reduce quality of water feeding an Indian reservation, pursuant to the Indian tribe's water right under a prior consent decree). It does not, however, give the United States responsibility for the quality of water within the reservation, independent of any third-party diversion or contamination.

Thus, even if Congress intended the term "land" in the Act of 1958 to include reserved water rights under the

*Winters* doctrine, the Act still does not impose a fiduciary duty to manage water quality on the Hopi Reservation, absent third-party interference. At most, by holding reserved water rights in trust, Congress accepted a fiduciary duty to exercise those rights and exclude others from diverting or contaminating water that feeds the reservation. We cannot infer from this duty that Congress further intended the United States to be responsible for providing water infrastructure and treatment needed to eliminate naturally occurring contaminants such as arsenic.

Finally, the Hopi Tribe points to several other statutory provisions that involve the United States in the provision of drinking water on the Hopi Reservation. The Indian Health Improvement Act, 25 U.S.C. § 1632(a)(5), states that "it is the policy of the United States, that all Indian communities and Indian homes . . . be provided with safe and adequate water supply systems and sanitary sewage waste disposal systems as soon as possible." Section 1632 authorizes the Secretary of the Interior to provide technical and management assistance in the building and operation of sanitation facilitates. 25 U.S.C. § 1632(b). Similarly, the Indian Sanitation Facilities Act authorizes the Indian Health Service (IHS) "to construct, improve, extend, or otherwise provide and maintain . . . domestic and community water supplies and facilities . . . for Indian homes, communities and lands." 42 U.S.C. § 2004a(a)(1). Another statute directs the IHS to "provide health promotion . . . services to Indians," 25 U.S.C. § 1621b(a), which is defined to include "making available safe water and sanitary facilities." 25 U.S.C. § 1603(11)(D). Finally, several statutes appropriate funding for the extension, operation, and maintenance of

water supplies on Indian lands. *See* 25 U.S.C. §§ 13, 631(9).[1]

The Hopi Tribe "does not rely on these statutes as the source of substantive law listing specific duties that the government failed to perform." Appellant's Reply Br. at 28. Rather, the Hopi Tribe argues that these statutes demonstrate that the United States exercises comprehensive control over water resources on the Hopi Reservation, and that the United States' actions are taken pursuant to congressional authorization. The Hopi Tribe argues that under *Mitchell II* and *White Mountain Apache*, therefore, the statutes show Congress accepted the common-law trust duty "to maintain, protect, repair and preserve the trust property" that the United States actually manages and controls. *White Mountain Apache*, 537 U.S. at 469.

The Supreme Court has made clear that "[t]he Federal Government's liability cannot be premised on control alone." *Navajo II*, 556 U.S. at 301. Regardless of the United States' actual involvement in the provision of drinking water on the Hopi Reservation, we cannot infer from that control alone that the United States has accepted a fiduciary duty to ensure adequate water quality on the reservation.[2] Any common-law duties applicable to a

---

[1]    The Hopi Tribe also cites a statute detailing the United States' trust responsibilities in managing tribal funds and investments, which are not relevant to the management of drinking water quality on the reservation. *See* 25 U.S.C. § 162a(d)(8).

[2]    For this reason, we also find the Court of Federal Claims properly denied the Hopi Tribe's request for jurisdictional discovery relating to the United States' control over water resources on the reservation. Further evidence of actual control would not change the jurisdictional analysis.

private trustee when the trustee actually controls trust property are not relevant, unless they are clearly accepted by statute or regulation.

Unlike the statutory provision at issue in *White Mountain Apache*, 537 U.S. at 475, the statutory provisions asserted here cannot be interpreted to accept a common-law trust duty to preserve trust property that the trustee actually administers. The Supreme Court identified a common-law trust duty in *White Mountain Apache* because the statute—by simultaneously using trust language and authorizing exclusive use of the land—evoked common-law trust principles, leading to the inference that Congress intended to accept that particular trust duty. *Id.* Here, there is no such indication. Congress created a bare trust in the Act of 1958 and, separately, authorized certain actions to assist the Hopi Tribe in providing safe drinking water. None of these later provisions use trust language that might evoke common-law principles. Nor do they collectively authorize the kind of plenary control the Supreme Court found significant in *White Mountain Apache*, 537 U.S. at 476, and *Mitchell II*, 463 U.S. at 224. They only require the United States to assist in the provision of safe drinking water, and do not restrict the Hopi Tribe from managing the resource itself. Accordingly, we cannot infer from the trust language in the Act of 1958, combined with separate and scattered obligations to help provide safe drinking water, that Congress has "expressly accepted" a common-law fiduciary duty to manage water resources. *Jicarilla*, 131 S. Ct. at 2325.

Nor does *Mitchell II* suggest the United States has accepted a common-law fiduciary duty to manage water resources. The statutes asserted here do not give the kind of "full responsibility" and "elaborate control" over water resources that the Supreme Court found to support a fiduciary relationship regarding timber resources in

*Mitchell II*, 463 U.S. at 224–25.  Moreover, the Supreme Court in *Mitchell II* did not find Congress accepted unspecified common-law fiduciary obligations on the basis of control alone, as the Hopi Tribe argues here.  Rather, the Supreme Court found that, in light of that elaborate control and the trust language in the statutes, Congress intended the specific prescriptions listed in those statutes and regulations to constitute fiduciary obligations, enforceable in a suit for damages.  *Id.* at 226 ("[T]he statutes and regulations at issue in this case clearly establish fiduciary obligations of the Government in the management and operation of Indian lands and resources . . . .").  Thus, *Mitchell II* does not allow us to depart from the Supreme Court's repeated admonition that the United States is not subject to common-law trust duties, including any duties premised on control, unless it "expressly accepts those responsibilities by statute."  *Jicarilla*, 131 S. Ct. at 2325.

In sum, the sources of law relied on by the Hopi Tribe do not establish a specific fiduciary obligation on the United States to ensure adequate water quality on the Hopi Reservation.  Because the Hopi Tribe has failed to "identify a specific, applicable, trust-creating statute or regulation that the [United States] violated," *Navajo II*, 556 U.S. at 302, we do not need to reach the second step of the jurisdictional inquiry—whether the specific obligation is money mandating.  We conclude the Court of Federal Claims does not have jurisdiction over the Hopi Tribe's claim under the Indian Tucker Act.

IV

We understand that water quality on parts of the Hopi Reservation is unacceptable, due in part to insufficient funds for new water infrastructure.  But the Supreme Court's decisions are controlling in this case.  Because the Hopi Tribe has not identified a money-mandating obliga-

tion that the United States allegedly violated, we must affirm the Court of Federal Claims' dismissal of this suit for lack of jurisdiction under the Indian Tucker Act.

## AFFIRMED

No costs.