# United States Court of Appeals for the Federal Circuit

_____

**LUMMI TRIBE OF THE LUMMI RESERVATION, WASHINGTON, LUMMI NATION HOUSING AUTHORITY, HOPI TRIBAL HOUSING AUTHORITY, FORT BERTHOLD HOUSING AUTHORITY,**
*Plaintiffs-Appellees*

**FORT PECK HOUSING AUTHORITY,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

_____

2016-2196

_____

Appeal from the United States Court of Federal Claims in No. 1:08-cv-00848-EGB, Senior Judge Eric G. Bruggink.

_____

Decided: September 12, 2017

_____

JOHN FREDERICKS, III, Fredericks Peebles & Morgan, LLP, Mandan, ND, argued for plaintiffs-appellees. Also represented by JEFFREY S. RASMUSSEN, Louisville, CO.

STEVEN J. GILLINGHAM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by DAVID ALAN LEVITT, ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER; GARY ALAN NEMEC, DAVID A. SAHLI, PERRIN WRIGHT, United States Department of Housing and Urban Development, Washington, DC.

_____

Before PROST, *Chief Judge,* O'MALLEY, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

The government seeks review of a September 30, 2015 order of the Court of Federal Claims (the "Claims Court"). *See* Order, *Lummi Tribe of the Lummi Reservation v. United States*, No. 08-848C (Fed. Cl. Sept. 30, 2015), ECF No. 121. In that order, the Claims Court reaffirmed its prior ruling that the Native American Housing Assistance and Self-Determination Act of 1996 ("NAHASDA") is money mandating, giving the Claims Court jurisdiction over appellees' claims. *Id.* On June 9, 2016, this court granted the government's petition for interlocutory appeal to "ensure that the Court of Federal Claims is the court of proper jurisdiction before requiring it and the parties to undergo extensive unnecessary proceedings." Order at 3, *Lummi Tribe of the Lummi Reservation v. United States*, No. 2016-124 (Fed. Cir. June 9, 2016), ECF No. 1-2. For the following reasons, we vacate and instruct the Claims Court to dismiss this action for lack of subject-matter jurisdiction.

BACKGROUND

Congress enacted NAHASDA, 25 U.S.C. §§ 4101–4243, to fulfill the federal government's responsibility to Indian tribes and their members "to improve their housing conditions and socioeconomic status so that they are

able to take greater responsibility for their own economic condition." *Id.* § 4101(4). In particular, NAHASDA established an annual block grant system, whereby Indian tribes receive direct funding in order to provide affordable housing to their members. The relevant sections of NAHASDA require HUD to make grants according to a regulatory formula based on several factors, including: (1) "[t]he number of low-income housing dwelling units . . . owned or operated" by the tribes on NAHASDA's effective date; (2) the number of Indian families and extent of poverty and economic distress within a tribe's area; and (3) "[o]ther objectively measurable conditions as [HUD] and the Indian tribes may specify." *Id.* § 4152(b)(1)–(3).

The dwelling units described in factor (1) are called Formula Current Assisted Stock ("FCAS"). Each eligible dwelling unit in a tribe's FCAS is entitled to a sum certain amount of funding each year based upon a calculated operating subsidy and modernization allocation. HUD regulations establish which units initially count as FCAS in the formula, and when those units no longer qualify (e.g., when they have been or could have been conveyed to homebuyers). 24 C.F.R. §§ 1000.312, 1000.314, 1000.318. Once awarded these subsidies, grantee tribes are limited in how and when they may dispense the funds, which can be used only on statutorily specified activities in accordance with program requirements. *See, e.g.*, 25 U.S.C. § 4139; 2 C.F.R. § 200.313–314.

In the event of a grantee's failure to comply substantially with NAHASDA, HUD can recapture grant funds by: "(A) terminat[ing] payments under this [Act] to the recipient; (B) reduc[ing] payments [by the amount not expended in compliance with the Act]; (C) limit[ing] the availability of payments [to compliant activities]; or (D) . . . provid[ing] a replacement tribally designated housing entity for the recipient." 25 U.S.C. § 4161(a)(1).

Appellees are an Indian tribe and three tribal housing entities (collectively, "the Tribes") who qualified for and received NAHASDA block grants. *Lummi Tribe of the Lummi Reservation v. United States*, 99 Fed. Cl. 584, 588 (2011) ("*Lummi I*"). In 2001, a HUD Inspector General report concluded that, since the enactment of NAHASDA, HUD had improperly allocated funds to the Tribes because the formula that HUD applied had included housing that did not qualify as FCAS. *Id.* HUD informed the Tribes of the amount overfunded, the regulations on which HUD based its decision, and the housing units that HUD found ineligible. *Id.* at 599. HUD also provided the Tribes with the opportunity to dispute HUD's findings regarding FCAS unit eligibility or appeal the determinations of overfunding. *Id.* Thereafter, HUD eliminated the ineligible units from the FCAS data and recouped the excess funding by deducting the amount overfunded from subsequent grant allocations—$863,236 from Lummi, $249,689 from Fort Berthold, and $964,699 from Hopi. *Lummi Tribe of the Lummi Reservation v. United States*, 106 Fed. Cl. 623, 625 (2011) ("*Lummi II*").

The Tribes brought suit in the Claims Court under the Tucker Act and the Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1) and 1505, respectively, alleging that HUD improperly deprived them of grant funds to which they were entitled. In relevant part, the Tribes alleged that: (1) HUD misapplied the NAHASDA formula by inappropriately removing housing units from the FCAS data, which led to decreased grant amounts; and (2) HUD was obligated by 25 U.S.C. § 4165 to provide the Tribes with a hearing during which they could respond to the HUD report, but HUD failed to do so. *Lummi I*, 99 Fed. Cl. at 591; *see generally* 25 U.S.C. § 4165 ("The Secretary shall provide each recipient that is the subject of a report made by the Secretary . . . . notice that the recipient may review and comment on the report during a period of not less than 30 days . . . .").

The government moved to dismiss the claims for lack of jurisdiction, arguing in particular that NAHASDA's provision for block grants is not money mandating. *Lummi I*, 99 Fed. Cl. at 591. The Claims Court disagreed, noting that NAHASDA provides that the Secretary "shall . . . make grants" and "shall allocate any amounts" among Indian tribes that comply with certain requirements. *Id.* at 594. The Claims Court concluded that "the Secretary is thus bound by the statute to pay a qualifying tribe the amount to which it is entitled under the formula," meaning that the statute "can fairly be interpreted as mandating the payment of compensation by the government." *Id.* (citing *Greenlee Cty. v. United States*, 487 F.3d 871, 877 (Fed. Cir. 2007)).

Initially, the Claims Court dismissed the Tribes' procedural claims, finding that HUD had provided "full notice of the government's claims along with a meaningful opportunity to respond." *Id.* at 599. The Tribes moved for reconsideration on this point and, on September 29, 2011, the Claims Court vacated its decision. *Lummi Tribe II*, 106 Fed. Cl. 623, 624 n.1. The Tribes amended their complaint, re-alleged that HUD had violated the procedural requirements of NAHASDA, and argued for the first time that those violations rendered the change in grant funds an illegal exaction. *Id.* at 625.

The government thereafter filed another motion to dismiss, arguing that HUD had complied with all relevant NAHASDA provisions. *Id.* at 623–24. The Claims Court disagreed, holding that "[p]roviding [the Tribes] with the opportunity for a hearing in this case before adjusting their grant amounts was . . . something HUD was required—but failed—to do." *Id.* at 633. The issue of whether HUD, on the merits, had properly determined the Tribes' FCAS units when applying NAHASDA formulae was reserved for trial. *See Lummi Tribe of the Lummi Reservation v. United States*, 112 Fed. Cl. 353, 355 n.2 (2013) ("*Lummi III*").

The case was then transferred to Senior Judge Bruggink, who ordered supplemental briefing to address a number of questions, including whether NAHASDA is money mandating and whether NAHASDA's status as such affected the illegal exaction claim. *See* Order, *Lummi*, No. 08-848C (Fed. Cl. Sept. 30, 2015), ECF No. 121. The Claims Court reaffirmed its holding that NAHASDA is money mandating, but held that "the failure to give a hearing under § 4165 does not, on its own, support an illegal exaction claim." *Id.* at 5. The court explained that "the substantive provisions of NAHASDA [are money mandating], not its procedural elements," and "nothing in the statutory framework . . . suggests that the remedy for failure to afford procedural rights is, without further proof of entitlement, the payment of money." *Id.*

Because the Claims Court's finding that NAHASDA itself is money mandating was therefore dispositive on the issue of jurisdiction, the government sought and obtained certification for interlocutory appeal. The Tribes, meanwhile, sought reconsideration of the Claims Court's illegal exaction holding, which the Claims Court denied. Order, *Lummi*, No. 08-848C (Fed. Cl. Apr. 20, 2016), ECF No. 138; Order, *Lummi*, No. 2016-124 (Fed. Cir. June 9, 2016), ECF No. 1-2.

STANDARD OF REVIEW

"Subject matter jurisdiction is a question of law that we review de novo." *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008). In particular, we "review[] without deference the trial court's statutory interpretation." *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005). The "plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *Hopi Tribe v. United States*, 782 F.3d 662, 666 (Fed. Cir. 2015).

DISCUSSION

The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of sovereign immunity in the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *United States v. Testan*, 424 U.S. 392, 398 (1976). In the parlance of Tucker Act cases, that source must be "money-mandating." *See Mitchell*, 463 U.S. at 217; *Testan*, 424 U.S. at 398. On appeal, the government makes a single affirmative argument: the Claims Court erred in finding NAHASDA to be a money-mandating statute, such that the Claims Court is without jurisdiction over this case. We agree.

A statute is money mandating if either: (1) "it can fairly be interpreted as mandating compensation by the Federal Government for . . . damages sustained"; or (2) "it grants the claimant a right to recover damages either expressly or by implication." *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008) (quoting *Mitchell,* 463 U.S. at 216–17 (internal quotation marks omitted)). NAHASDA does neither, as revealed by the ultimately equitable nature of the Tribe's claims. We find *National Center for Manufacturing Sciences v. United States*, 114 F.3d 196 (Fed. Cir. 1997), instructive on this point. The statute at issue in that case stated that "not less than $40,000,000 of the funds appropriated in this paragraph shall be made available only for the [plaintiff]." *Nat'l Ctr.*, 114 F.3d at 198 (quoting Pub. L. No. 103-139, 107 Stat. 1418, 1433 (1993)). The Air Force only released $24,125,000, and so the plaintiff brought suit in district court, seeking an order directing the Air Force to release the remainder. On the Air Force's motion, the district court transferred the case to the Claims Court, a transfer that this court reversed on appeal. Specifically, relying on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), this court

outlined "the kinds of statutory claims for which a Tucker Act remedy is available"—and found the statute at issue wanting:

Some portions of NCMS's complaint suggest that NCMS seeks a "naked money judgment" for $15,875,000 against the government.  Other portions of the complaint, however, make clear that NCMS anticipates the need for injunctive relief, such as an order enjoining the defendants from obligating and disbursing particular funds that should be reserved for NCMS, and "[e]xtending the time of obligation" in the Appropriations Act to preserve the status quo.  *Looking behind the complaint, moreover, we conclude that it is doubtful that a simple money judgment in NCMS's favor would be appropriate, even if NCMS is correct in its claim that it is entitled to have the remaining $15,875,000 referred to in the Appropriations Act allotted to its account.*

The Appropriations Act directs that the appropriated funds be used "[f]or expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, as authorized by law."  Pub. L. No. 103–139, 107 Stat. 1418, 1433 (1993).  *Thus, as NCMS acknowledged at oral argument, it would not be entitled to a monetary judgment that would allow it to use the funds appropriated under the Act for any purpose, without restriction.*  Instead, the Act requires that NCMS use any money disbursed from the appropriated funds to perform the basic and applied research functions called for in the Act. The Act thus contemplates a cooperative, ongoing relationship between NCMS and the Air Force in the allocation and use of the funds.

*Nat'l Ctr.*, 114 F.3d at 201 (emphases added). Accordingly, we determined that the district court was not "divest[ed] . . . of the authority to conduct APA review in this case," because "the remedy provided by a Tucker Act suit in the [Claims Court would] not serve as the 'other adequate remedy in a court.'" *Id.* at 202 (quoting 5 U.S.C. § 704); *see generally* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review.") (emphasis added).

The Tribes correctly observe that *National Center* did not explicitly hold that the Claims Court was without jurisdiction to hear the plaintiff's claim. Whether or not that conclusion can be fairly implied from the reasoning in *National Center*, the reasoning alone remains instructive. Under NAHASDA, the Tribes are not entitled to an actual payment of money damages, in the strictest terms; their only alleged harm is having been allocated too little in grant funding. Thus, at best, the Tribes seek a nominally greater strings-attached disbursement. But any monies so disbursed could still be later reduced or clawed back. *See* 25 U.S.C. § 4161(a)(1). And any property acquired with said monies would be "held in trust" by the Tribes, "as trustee for the beneficiaries" of NAHASDA. 2 C.F.R. § 200.316; *see generally* 24 C.F.R. §§ 85.1, 1000.26. The Tribes are even restricted with respect to the particular bidding and bond terms they may use for, say, housing construction contracts. *See* 2 C.F.R. § 200.325; 24 C.F.R. § 1000.26.

To label the disbursement of funds so thoroughly scrutinized and cabined as a remedy for "damages" would strain the meaning of the term to its breaking point. As *National Center* highlights, that relief is equitable—and thus not within the Claims Court's purview. "Although the Tucker Act has been amended to permit the [Claims Court] to grant equitable relief *ancillary* to claims for monetary relief," there must be an underlying claim for

"'actual, presently due money damages from the United States.'" *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)) (emphasis added). "It is not enough that the court's decision . . . will ultimately enable the plaintiff to receive money from the government." *Id.* at 716; *see generally Katz v. Cisneros*, 16 F.3d 1204, 1208–09 (Fed. Cir. 1994) ("Hollywood Associates seeks payments to which it alleges it is entitled pursuant to federal statute and regulations; it does not seek money as compensation for a loss suffered. . . . That a payment of money may flow from a decision that HUD has erroneously interpreted or applied its regulation does not change the nature of the case.").

Here, the underlying claim is not for presently due money damages. It is for larger strings-attached NAHASDA grants—including subsequent supervision and adjustment—and, hence, for equitable relief. Indeed, *any* such claim for relief under NAHASDA would necessarily be styled in the same fashion; the statute does not authorize a free and clear transfer of money. Accordingly, the Claims Court erred in finding NAHASDA to be money mandating.

The Tribes contend, in the alternative, that alleged procedural failures associated with HUD's grant decision resulted in a per se illegal exaction, independently conferring jurisdiction on the Claims Court. We disagree. An illegal exaction claim must be based on property *taken* from the claimant, not property left *unawarded* to the claimant, rendering the Tribes' exaction claim invalid on its face. "An 'illegal exaction' . . . involves money that was 'improperly paid, exacted, or taken *from the claimant* in contravention of the Constitution, a statute, or a regulation.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)) (emphasis added). The Tribes have not and cannot provide legal

support for the notion that the failure to disburse property that was never in the claimant's possession or control constitutes an exaction. Accordingly, we reject their illegal exaction claim as an alternative basis for the Claims Court's jurisdiction.

Although we adopt the government's position, we have severe misgivings about the incongruency of its stances in this and related litigation. In particular, it appears that the government has taken, essentially, the opposite position in at least one of our sister circuits in parallel litigation. *See Modoc Lassen Indian Hous. Auth. v. United States Dep't of Hous. and Urban Dev.*, 864 F.3d 1212, 2017 WL 3140877 (10th Cir. July 25, 2017). In *Modoc*, an appeal from a federal district court action that was brought pursuant to NAHASDA, the government argued that "the district court nevertheless erred in ordering HUD to return the alleged [NAHASDA] overpayments to the Tribes because . . . such an order amounts to an award of 'money damages' and therefore runs afoul of 5 U.S.C. § 702." *Id.* at *2. "[S]ection 702 . . . waives sovereign immunity for *non-monetary claims* against federal agencies," *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) (emphasis added), whereas the Tucker Act is the appropriate vehicle for pursuing "the right to *money damages.*" *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (emphasis added). Two of the Tenth Circuit's three opinions found the government's argument persuasive, holding that § 702 was not the correct vehicle for the Tribes' claims. *Modoc*, 2017 WL 3140877, at *10. [1]

---

[1]   Because *Modoc* was an appeal from a federal district court action, the Tenth Circuit had no occasion to consider the Tucker Act's jurisdictional requirement that

At oral argument before this court, the government appeared to even confirm that there is some tension in the positions that it has taken.  Oral Argument at 13:34–41, *available at* http://oralarguments.cafc.uscourts.gov/default .aspx?fl=2016-2196.mp3 (stating that, if this case were transferred from the Claims Court, "the [district] court could entertain [the claims], but in the end it would be able to grant no remedy, and that's what we're saying in the Tenth Circuit").  And yet, without irony, the government accuses *the Tribes* of adopting an unfair "gotcha" strategy in this litigation.  Appellant Br. 42.  Of the government's two faces, we find the one presented to the Claims Court—the one arguing that this "is not a suit for Tucker Act damages"—to be the correct one.  *Id.* at 16.

### CONCLUSION

For the foregoing reasons, the Claims Court's order is vacated, and we instruct the Claims Court to dismiss this action for lack of subject-matter jurisdiction.

**VACATED AND DISMISSED**

---

a plaintiff identify a separate source of substantive law that is "money-mandating."