NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PHILIP EMIABATA, DBA PHILEMA BROTHERS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1703

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00605-PEC, Judge Patricia E. Campbell-Smith.

---

Decided:  April 8, 2022

---

PHILIP EMIABATA, Pflugerville, TX, pro se.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before PROST, MAYER, and TARANTO, *Circuit Judges*.

PER CURIAM.

This appeal involves Philip Emiabata's second action against the United States brought to seek damages for the termination of his mail delivery contract by the U.S. Postal Service (USPS). He brought the first action in the Court of Federal Claims (Claims Court), which granted the United States summary judgment, a judgment we affirmed. *Emiabata v. United States*, 139 Fed. Cl. 418 (2018) (*Emiabata I*), *aff'd*, 792 F. App'x 931 (Fed. Cir. 2019) (*Emiabata II*). In the present action, initially brought in district court but transferred to the Claims Court, Mr. Emiabata repeats his earlier challenge to the termination of his contract and adds a new claim that the USPS improperly put him on a "suspension list" of persons prevented from obtaining USPS contracts (or subcontracts). The Claims Court concluded that the termination claims were barred by the doctrine of res judicata (claim preclusion) and that it lacked jurisdiction over the suspension claims; it dismissed the termination claims while transferring the suspension claims to the United States District Court for the District of Vermont. *Emiabata v. United States*, 151 Fed. Cl. 610, 613 (2020) (*Emiabata III*). We affirm the Claims Court's dismissal of the termination claims, and we dismiss Mr. Emiabata's appeal of his transferred suspension claims because we lack jurisdiction to review the transfer.

I

In September 2015, the USPS issued Solicitation No. 150-299-15, requesting proposals to enter into a contract to transport and deliver mail between Cincinnati and Milford, Ohio. *Emiabata II*, 792 F. App'x at 932. Mr. Emiabata timely submitted a proposal in October 2015 and included forms that identified Mr. Emiabata and Sylvia Emiabata as the only two people who would act as drivers under the contract. *Id.* at 932–33. Mr. Emiabata also submitted a "Contract Personnel Questionnaire" in which he responded "N/A" to Question 22, which asked: "In the past [five] years,

have you been convicted of any traffic violations (other than parking) or currently have charges pending?" *Id.* at 933.

Staff of the USPS contracting officer conducted a pre-award conference with Mr. Emiabata in December 2015, at which the participants discussed various requirements, including submission of proof of insurance, a five-year motor vehicle record, and certain forms for all proposed drivers. *Id.* Subsequently, Mr. Emiabata provided to USPS an application for insurance with Progressive County Mutual Insurance and a temporary insurance card with the name of the "Rated driver" redacted. *Id.* He later submitted a "Commercial Auto Insurance Coverage Summary" issued by Progressive listing Philema Brothers as the "insured" and only a "Roland Hunter" as the "Rated driver." *Id.* The USPS accepted Mr. Emiabata's proposal at the end of 2015 and awarded him the delivery contract. *Id.* The contract was scheduled to commence on February 5, 2016 and run until June 30, 2019. *Id.*

In January 2016, the USPS again met with Mr. Emiabata, informing him that necessary documents were missing and instructing him to provide a driving history record of at least five years and to complete the Contract Personnel Questionnaire. *Id.* On February 5, 2016, Mr. Emiabata "commenced contract performance," despite the missing documents. *Id.* In March 2016, the USPS contacted Mr. Emiabata again and urged him to respond "ASAP" with the still-missing "vital" documents. *Id.* at 933–34. The USPS advised him that he had to respond within four calendar days or he would face termination of the contract. *Id.* at 934.

"A few days" later, Mr. Emiabata submitted several forms, including the Questionnaire, in which he disclosed two traffic violations: first, a charge of "reckless driving" issued by the Commonwealth of Virginia on April 1, 2014, which Mr. Emiabata claimed was "still under litigation";

and second, a charge of "fail[ure] to obey [a] sign" issued by the State of Delaware on May 30, 2013. *Id.* Mr. Emiabata did not submit a five-year driving record for any driver. *Id.*

On March 22, 2016, the USPS learned from a newspaper article dated February 27, 2015, that in February 2015 Mr. Emiabata had been "tried and convicted" of "reckless driving (failing to maintain control)" in connection with a traffic incident that occurred in April 2014 in Wythe County, Virginia, in which two people were killed and another was "seriously injur[ed]." *Id.*

The day after reading the article, the contracting officer notified Mr. Emiabata that his contract would be terminated for default, effective March 25, 2016. The officer explained that Mr. Emiabata had failed to provide the required forms, including insurance documents and a five-year driving record, and that he had provided false information with respect to his reckless driving conviction. *Id.*

In March 2017, Mr. Emiabata filed his first suit against the USPS in the Claims Court, alleging, among other things, wrongful termination of the delivery contract by the USPS. *Id.* In August 2018, the Claims Court granted summary judgment in favor of the United States, holding that USPS's termination of Mr. Emiabata for default was justified. *Emiabata I*, 139 Fed. Cl. at 427. We affirmed, explaining that because Mr. Emiabata failed to submit proof of liability insurance and motor vehicle records to the USPS as required under the Delivery Contract, and made false and misleading statements concerning his past traffic violations, he was in default as a matter of law. *Emiabata II*, 792 F. App'x at 938–39.

While Mr. Emiabata's first case was pending at the Claims Court, he filed a second suit in the United States District Court for the District of Vermont, which dismissed his complaint for lack of subject matter jurisdiction and transferred it to the Claims Court in the interests of justice. *See Emiabata III*, 151 Fed. Cl. at 614. Mr. Emiabata's

transfer complaint in the Claims Court again challenged the termination for default, as he had done in his earlier action, and newly alleged that he had been placed on a supposed "suspension list" (disabling him from securing USPS contracts) without due process. *Id.* The Claims Court stayed the case pending our resolution of the appeal in the first case. *Id.* at 613. Once we decided that appeal, the Claims Court returned to the second suit. It granted the government's motion to dismiss the default termination claims, holding that they "fall squarely within the ambit of *res judicata.*" *Id.* at 616. The Claims Court determined that it lacked subject-matter jurisdiction over the suspension claims, because Mr. Emiabata failed to identify any money-mandating source of law for those claims, but the court transferred those claims rather than dismiss them. *Id.* at 616–18. The Claims Court entered judgment on the termination claims under Rule 54(b) of the Rules of the Court of Federal Claims and transferred the suspension claims to the Vermont district court under 28 U.S.C. § 1631.

Mr. Emiabata timely appeals the Claims Court's dismissal of the termination claims and transfer of the suspension claims.

## II

We first address whether we have appellate jurisdiction over Mr. Emiabata's appeal. Under 28 U.S.C. § 1295(a)(3), this court has jurisdiction over any "appeal from a final decision of the United States Court of Federal Claims." A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (citations and internal quotation marks omitted). An authorized kind of final judgment is one covering less than the entire case if entered in accordance with Rule 54(b). The Claims Court properly entered partial judgment on the termination claims under that

provision.  We have jurisdiction over the appeal from that partial judgment.

The suspension claims are another matter.  The Claims Court transferred the suspension claims after determining that it lacked jurisdiction over them.  We lack jurisdiction to review the Claim Court's ruling on the suspension claims.

Under the general finality principles governing appeals from district courts to regional circuit courts, it is well established that a transfer order "is interlocutory and thus not immediately appealable, but appealable only incident to a final judgment in a case (or a partial judgment pursuant to Fed. R. Civ. P. 54(b)) or as a certified question pursuant to 28 U.S.C. § 1292(b)." *F.D.I.C. v. Maco Bancorp, Inc.*, 125 F.3d 1446, 1447 (Fed. Cir. 1997).  As a general matter, those principles govern appeals to this court, including appeals from the Claims Court.  Here, the Claims Court did not enter final judgment, and it did not certify a question of law, on the suspension claims.

Although this court may review transfer orders in certain circumstances, notwithstanding their interlocutory nature, under 28 U.S.C. § 1292(d)(4)(A), that authority is inapplicable here.  This statute provides:

> The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal *from* an interlocutory order of a district court of the United States . . . granting or denying, in whole or in part, a motion to transfer an action *to* the United States Court of Federal Claims under section 1631 of this title.

*Id.* (emphases added).  The Claims Court's transfer order in the present case does not fall within that provision, which covers only a § 1631 transfer *to* the Claims Court, not one *from* the Claims Court.

The transfer of the suspension claims also cannot be appealed under the collateral-order doctrine. Under that doctrine, an order may be appealable if it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. *See Bd. of Regents of the Univ. of Texas Sys. v. Boston Scientific Corp.*, 936 F.3d 1365, 1371 (Fed. Cir. 2019). At a minimum, the last requirement is not met. Whether the Claims Court or the district court has jurisdiction over Mr. Emiabata's suspension claims can be effectively reviewed upon any appeal from a final judgment eventually entered by the Vermont district court.[1]

Because the Claims Court's transfer order is interlocutory in nature and does not fall within any jurisdictional exceptions to the basic finality requirement for appeal, we lack jurisdiction to review Mr. Emiabata's appeal of the Claims Court's ruling on the suspension claims. We therefore review only the Claims Court's ruling on the termination claims.

## III

We review de novo the Claims Court's dismissal for lack of jurisdiction, taking as true all undisputed facts asserted in the complaint and drawing all reasonable inferences in favor of the plaintiff. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). As plaintiff, Mr. Emiabata bears the burden of establishing subject-matter jurisdiction by a preponderance of the

---

[1]    Mr. Emiabata likewise could not meet the exacting requirements for obtaining a writ of mandamus, which would require, among other things, that he have no alternative means of obtaining the relief requested. *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989).

evidence. *Hopi Tribe v. United States*, 782 F.3d 662, 666 (Fed. Cir. 2015). Pro se plaintiffs are entitled to a liberal construction of their complaints, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but they must meet jurisdictional requirements, *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

Mr. Emiabata challenges the dismissal of his default termination claims based on the doctrine of res judicata. Under that doctrine, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979), precluding "the parties or their privies from relitigating issues that were or could have been raised in that action," *Allen v. McCurry*, 449 U.S. 90, 94 (1980). A claim is precluded when "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003). We agree with the Claims Court that Mr. Emiabata's termination claims here are covered by the doctrine: the parties are the same in the two suits; we affirmed the Claims Court's final judgment on the merits of the termination claim in the first suit; and the two claims are based on the same transactional facts—specifically, the same contract and same agency conduct. *Emiabata II*, 792 F. App'x at 937–39. In these circumstances, the doctrine of res judicata, based on policies of judicial economy and finality, properly precludes what amounts to an attempt to relitigate the claim he presented earlier.

## IV

For the foregoing reasons, we dismiss Mr. Emiabata's appeal as to his suspension claims for lack of jurisdiction and affirm the Claims Court's dismissal of his termination claims.

EMIABATA v. US                                                    9

The parties shall bear their own costs.

**AFFIRMED IN PART, DISMISSED IN PART**